324 So.2d 694 (1976)
Joseph S. LEE, a/k/a "Smiley Lee", Appellant,
v.
STATE of Florida, Appellee.
No. U-369.
District Court of Appeal of Florida, First District.
January 13, 1976.
*695 James L. Harrison of Harrison, Finegold, Smith & Shaw, Jacksonville, for appellant.
Robert L. Shevin, Atty. Gen., and Donald K. Rudser, Asst. Atty. Gen., for appellee.

ON PETITION FOR REHEARING
PER CURIAM.
Before his retirement, Acting Chief Judge Johnson prepared an opinion expressing the Court's decision reversing the judgment of conviction and remanding the case for a new trial. That opinion was concurred in by Judge Mills and the decision to reverse was concurred in by Mr. Justice Drew (Ret.). After denying rehearing, the Court withdrew the opinion to reconsider certain portions of it. Aaron K. Bowden, Esquire, the Assistant State Attorney who prosecuted the case in the court below, was heard in this Court in his own behalf concerning the prior opinion's characterization of his conduct at the trial. Judge Johnson's opinion, with deletions considered appropriate by the reconstituted panel, is now adopted as that of the Court.
Appellant seeks reversal of his conviction after a jury trial on charges of unlawfully requesting, soliciting or accepting a bribe and conspiracy to accept a bribe, for which he received two concurrent three-year sentences.
Along with two other City Commissioners of the City of Fernandina Beach, Curtis W. Smith, a/k/a "Topsy" Smith, and John Beckett, appellant Lee, who was the Mayor and a City Commissioner of said City at the time, was charged by a twocount indictment with requesting, soliciting or accepting a $6,000.00 bribe and with conspiracy to commit a felony. An informal pretrial conference was had between counsel for the parties and the trial judge. At this time, the Assistant State Attorney, Mr. Aaron K. Bowden, suggested to the trial judge that each codefendant with his attorney appear separately before the trial judge and himself, and that the remaining codefendants and their attorneys be excluded from such a session. Counsel for *696 appellant Lee objected to being required to leave the sessions involving the codefendants on the grounds that they may have some effect upon his client. The trial court was of the opinion that it could participate in separate discussions or negotiations with each of the codefendants and announced that it would do so. Notes were made of each of the separate sessions, but they were not transcribed until after the trial of appellant Lee. It is now apparent from such transcripts that both of the codefendants wished to discuss with the trial judge the effect of changing their not guilty pleas to pleas of nolo contendere or guilty to one of the counts of the indictment.
As to codefendant Smith, the discussions involved a recommendation that if Smith changed his plea, he would, at most, be sentenced on one count to time in the County Jail; be placed on the work release program, and the residual count would be dismissed by the State. Also discussed was the possibility of granting the State's motion for a continuance of appellant's trial so that Smith could be deposed before he testified at appellant's trial. There was also a suggestion by the Assistant State Attorney, Mr. Bowden, that if Smith were to testify in appellant's trial as a witness for the State, the State would agree to a motion for a reduction of sentence if a term of confinement were imposed upon him.
As to codefendant Beckett's pretrial conference, Mr. Bowden, in the presence of Mr. Beckett, made an affirmative recommendation that Beckett, upon a plea, be placed on probation. Such recommendation was predicated upon Beckett's agreement to be a witness for the State in appellant Lee's trial and the degree of Beckett's involvement in the offenses charged. Discussions were also had concerning which count Beckett would plead to and again Mr. Bowden made reference to the fact that he would move for a continuance of appellant's trial.
Immediately after these pretrial conferences with the individual codefendants, all of the codefendants and their attorneys returned to the courtroom. At this time, codefendant Smith entered a plea of nolo contendere as to Count I and codefendant Beckett entered a plea of guilty with respect to Count II, and the trial court accepted their pleas and ordered presentence investigations. Thereafter, the trial court, Mr. Bowden and appellant's counsel discussed certain discovery problems and Mr. Bowden then formally moved for a continuance of appellant's trial. Appellant's counsel strenuously objected to the motion for continuance, contending that he and his client were ready for trial, that a continuance would work a prejudice upon his client and that the State had had every opportunity to prepare for the trial. The trial court granted the State's motion for continuance, and appellant's trial was set for October 15, 1973. Prior to appellant's trial, a sentencing hearing was held. Codefendant Smith was sentenced to be confined in the County Jail for a term of 90 days, with the recommendation that he be placed in the work release program, and codefendant Beckett was placed on probation for a period of one year. The State withdrew the residual counts against these codefendants. Adjudication of guilt was withheld as to Beckett.
Appellant's trial commenced on October 15. We do not deem it necessary to relate all the evidence and testimony presented at appellant's trial. Only those portions of the trial proceedings relevant to this opinion and the points raised by appellant will be discussed herein.
We first consider appellant's points of error concerning the propriety of the trial court proceedings in relation to the testimony from Mr. Beckett and Mr. Smith. With regard to the testimony of Mr. Beckett, he stated during cross-examination by appellant's counsel that he did not know and was not sure that he would be placed on probation before he entered *697 his guilty plea. And, on redirect examination by Mr. Bowden, Beckett was asked whether the State's recommendation of probation was conditioned upon his giving testimony favorable to the State, to which Beckett replied in the negative. The transcript of Beckett's pretrial hearing, at which appellant was not present, was not available to appellant until after the trial of this cause. Said transcript affirmatively demonstrates that the Assistant State Attorney, Mr. Bowden, Beckett's attorney and the trial judge reached an agreement concerning placing Beckett on probation for one year and withholding adjudication of guilt. Also discussed was the fact that Beckett had agreed to be a witness for the State and that his probation could be revoked for failure to fully cooperate with the State. Beckett, of course, was present at his pretrial conference. Thus, it appears that Beckett, as a State witness at appellant's trial, was not completely candid in his answers to the questions cited above. Appellant was unable to impeach Beckett's testimony in these matters due to his lack of full knowledge of the terms of the Beckett negotiations. In this Court's case of Wolfe v. State, 190 So.2d 397 (Fla.App. 1st, 1966), we held that it is a deprivation of due process for a conviction to be obtained through the use of false evidence, and that it is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon the defendant's guilt. The State prosecutor has an affirmative duty to correct what he knows to be false and to elicit the truth. Even though the State itself does not solicit the false evidence, it may not allow it to go uncorrected when it appears. Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Here, not only did Bowden allow the testimony of Beckett regarding the negotiation as to the assurance of probation to go through uncorrected, he further, on redirect, asked questions concerning the condition of probation that he be a cooperative witness for the State in this trial. In response to the questions whether Bowden or anyone else had told him that his probation would be revoked if he did not testify in a certain manner, or whether anyone threatened him or intimidated him to get him to testify or told him that the State would not recommend probation if he did not testify as to a statement made by appellant, Beckett answered "No Sir." These questions and answers are contradictory to the transcript of Beckett's pretrial conference. It was specifically stated by Mr. Bowden at said conference that Bowden's recommendation of probation for Beckett was at least partially predicated upon his testimony and his agreement to be a witness for the State. Mr. Bowden also requested at said conference:
"that it be a condition of probation, or understood, where the State would have some protection, that failure to fully and faithfully disclose information within his knowledge to the State Attorney concerning this incident would constitute violation of probation, and his probation could be revoked for failure to do so."
Thus, we conclude that Mr. Bowden's failure to fully inform the jury regarding the extent of the negotiations pertaining to witness Beckett, along with his affirmative solicitation of testimony from Beckett concerning the conditions of his probation with regard to his testimony in this case, denied the jury facts which were necessary for it to have in order to properly pass upon the credibility of Beckett's testimony. Such action, along with the action of the Assistant State Attorney with regard to witness Smith, as discussed infra, constituted a deprivation of due process of law, tainted the verdict against appellant and entitles the appellant to a reversal of the judgment appealed and a remand for a new trial.
We turn now to the prosecutor's conduct with regard to the witness Smith. On the day that Smith was to testify as a witness for appellant Lee, he was called into the Assistant State Attorney's Office *698 and was informed by Mr. Bowden that if he testified under oath to those matters which he had previously asserted to Bowden, Bowden would seriously consider filing perjury charges against him. Bowden also called Smith a "bald-faced liar." When appellant made a motion for mistrial, Bowden told the trial court that Smith had always told the same story, but that he had hoped that Smith might "eventually tell what I (Bowden) considered to be the truth in the case." The witness Smith told appellant's counsel that he was "scared to death to testify". It is our conclusion that the threats and personal abuse toward the witness Smith by the prosecutor minutes before Smith was to take the stand on behalf of the defendant is grounds for reversal of the judgment appealed and a new trial. As quoted in Mathews v. State, 44 So.2d 664, 669 (Fla. 1950), in interviews with witnesses before trial, the examiner "must exercise the utmost care and caution to extract and not to inject information, and by all means to resist the temptation to influence or bias the testimony of the witnesses." There can be no doubt here that the threatening and abusive remarks to Smith by the prosecutor were attempts to inject certain information and to influence or bias the testimony which Smith was prepared to deliver on behalf of appellant. We believe Mr. Bowden abandoned the office of a prosecuting attorney and assumed the role of a persecutor. It is our opinion that the misconduct of the prosecutor in threatening the defense witness with prosecution for perjury and in resorting to name-calling so tainted this conviction that it cannot be permitted to stand. Where there is a considerable question of substantial prejudice to a defendant, as in this case, the ends of justice are best served by a new trial.
While we do not regard the comments made by the trial court concerning the coconspirator exception to the hearsay rule to be so prejudicial as to, standing alone, warrant a reversal, we do note that the trial court should scrupulously avoid commenting on the evidence in a case. We also take note that the same judge who conducted the pretrial conference in which the agreements between the Assistant State Attorney and the codefendants Smith and Beckett were reached also tried appellant's case. When Beckett did not forthrightly testify to the terms of the plea bargain, and it appeared that the prosecuting attorney did not intend to make a clear revelation of the bargaining session, the trial court should have done so.
Appellant has alleged other grounds for reversal, but in view of our conclusion that a new trial should be had, we do not deem it necessary to treat them here.
Among other errors in this case, either before the indictment or after or in the trial itself, we would like to point out the areas in which the State and its agents and attorneys committed abuses of the State's powers: At the time that the appellant came in the picture of the conspiracy, the State's primary witness, a Mr. James R. Johnson, was actually working with the Department of Law Enforcement. In the first taped conversation between James R. Johnson and Curtis "Topsy" Smith (taped without the knowledge of Mr. Smith and listened to by the two agents with the Department of Law Enforcement) the conversation was, inter alia: "Do you reckon the Mayor has got anything to do with that?
"Well, it seems on a couple of occasions, whenever the Mayor has got something going, this fellow always shows up.
"Oh, I see. You think he's there to defeat the thing or something, and, of course, the Mayor doesn't know what we're doing." Further on in the same tape, "I mean here's the thing that's got me worried. What if one of the guys gets nervous, and the time comes, and they ____ one of them figures ____ drop this pressure that this damn Mayor is putting on ____."
*699 It is obvious at that time that the Department of Law Enforcement had been brought into the case. It was just as obvious that the Mayor, who was the appellant in this case, was not in on the deal at that time. This case must be reversed and remanded, on other grounds, but the trial court should take a close look at the question of entrapment before proceeding further with the new trial.
It appears to us that guilt or innocence should be determined by the Rules of practice, statutes and constitutional safeguards of a person's rights, and that the same can be determined in this case observing the said rules and law which were sadly lacking in this trial.
For the reasons hereinabove stated, the judgment and sentence appealed from are reversed and this cause remanded for a new trial under the admonishment found in this opinion by this Court.
MILLS, Acting C.J., SMITH, J., and DREW (Ret.), Associate Judge, concur.